IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**DEBBRA N.[1]**,

      **Plaintiff,**

v.

      Civil Action 3:23-cv-110
      Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

## OPINION AND ORDER

Plaintiff, Debbra N., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income.  This matter is before the Court for disposition based upon Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14), and the administrative record (ECF No. 7).  For the reasons that follow, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

**I.**    **BACKGROUND**

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

Plaintiff protectively filed her application for DIB on November 7, 2019, and for SSI on January 6, 2020[2], alleging that she has been disabled since July 22, 2017, due to fibromyalgia, sciatica in lower back, umbilical hernia, stomach problems, and irritable bowel syndrome. (R. at 331-40, 342-46, 352-57, 397.) Plaintiff's applications were denied initially in November 2020 and upon reconsideration in February 2021. (R. at 118-42.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 196-220.) Plaintiff, who was represented by counsel, appeared and testified at a hearing held on October 13, 2021. (R. at 65-94.) A vocational expert ("VE") also appeared and testified. (*Id.*) On December 8, 2021, Administrative Law Judge Melinda Wells (the "ALJ") issued a decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 143-63.) The Appeals Council granted Plaintiff's request for review, and remanded the matter for further proceedings. (R. at 164-69.)

On remand, the claim was again assigned to ALJ Wells. After a telephone hearing held on September 19, 2022, the ALJ again concluded Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. (R. at 15-43, 44-64.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-7.) This matter is properly before this Court for review.

II.     **RELEVANT RECORD EVIDENCE**

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports, and hearing testimony as to Plaintiff's conditions and resulting limitations. Given the claimed error raised by Plaintiff, rather than

---

[2] Plaintiff previously filed for benefits on September 19, 2012. The claim was denied in an administrative decision date October 29, 2015. (R. at 95-117.)

summarizing that information here, the Court will refer and cite to it as necessary in the discussion of the parties' arguments below.

### III. ADMINISTRATIVE DECISION

On November 28, 2022, the ALJ issued her decision. (R. at 15-43.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2025. (R. at 21.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 22, 2017, the alleged onset date. (*Id.*) The ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the cervical and lumbar spine, restless leg syndrome, left shoulder impingement syndrome, and unspecified bipolar disorder. (*Id.*) The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23.)

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs, stoop kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds. She can frequently push, pull, handle, and reach with the left dominant upper extremity. She can never work at unprotected heights or around dangerous moving machinery or drive commercially. She can perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements involving only simple work-related decisions with no more than occasional workplace changes and occasional interaction with the public.

(R. at 24-25.)

At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform her past relevant work as a home health aid. (R. at 31.) The ALJ determined at step five of the sequential process that Plaintiff would be able to perform the requirements of representative occupations such as garment bagger, assembler, or a sorter. (R. at 32.) She therefore concluded that Plaintiff has not been disabled since July 22, 2027. (R. at 33.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices the claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinions of Chris Stephens, PMHNP-BC, a psychiatric mental health nurse practitioner, and Elizabeth Wilds, LSW, a licensed social worker,[4] under the supportability and consistency factors as required by 20 C.F.R. § 404.1520c.

---

[4] In what appears to be a typo, Plaintiff initially asserts that the ALJ "failed to properly weight the opinion of Natalie Ferretti, M.D." (ECF No. 11 at 13.)

(ECF No. 11 at 10-19.) The Court disagrees and concludes that the ALJ's decision is supported by substantial evidence.

As a preliminary matter, a claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. §§ 404.1513(a)(1); 416.913(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§404.1513(a)(3); 416.913(a)(3). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. §§ 404.1513(a)(4); 416.913(a)(4). "Medical opinion" is defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions....
>
> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (B) Your ability to perform mental demands of work activities, such as

> understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.... 20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §§ 404.1520c; 416.920c. These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Indeed, the regulations require an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). If,

7

however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," an ALJ must also articulate the other most persuasive factors. 20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3). In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how he evaluated each opinion or finding individually but must instead articulate how he considered the opinions or findings from that source in a single analysis using the five factors described above. 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1). Finally, the regulations explain that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. §§ 404.1520c(d); 416.920c(d).

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reuse v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021

WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

The crux of Plaintiff's argument, which does not appear until page 17 of her 22-page brief, appears to be that the ALJ "highlighted very little, if any, specific evidence" in support of her conclusions that the opinions of Mr. Stephens and Ms. Wilds were neither supported by their examinations nor consistent with record evidence from other sources. Stated another way in her reply, Plaintiff explains that the ALJ did not "provide[] an articulation of the evaluation of these factors" or "show … her work." (ECF No. 14 at 2.) To the extent Plaintiff makes more specific arguments, her complaints appear limited to the ALJ's consideration of Mr. Stephens' opinions. And, with respect to the matter of supportability, Plaintiff seems to suggest, but without much in the way of example, that the ALJ engaged in a selective review of the record. Further, as to the issue of consistency, Plaintiff contends that the ALJ did not reconcile the record evidence that was consistent with Mr. Stephens' opinions. On this last point, Plaintiff cites the opinions of the State agency consultants, David Dietz, Ph.D. and Irma Johnson, Psy.D. as record evidence consistent with Mr. Stephens' opinion. Similarly, Plaintiff points to the opinion of Dr. Christopher Ward, the Consultative Examiner as consistent with Mr. Stephens' opinion.

The ALJ's discussion, the starting point for the Court's analysis, addressed the multiple opinions of Mr. Stephens and Ms. Wilds in this way:

> The [ALJ] finds the opinion of Chris Stephens, PMHNP-BC, given in September of 2021 is not persuasive. Mr. Stephens opined [Plaintiff] is markedly limited in the ability to understand, remember, or apply information and the ability to concentrate, persist or maintain pace; and moderately limited in the ability to remember locations and work like procedures, and in understanding and carrying out detailed but uninvolved written or oral instructions. It was also opined [Plaintiff] is mildly limited in the ability to understand and carry out very short and simple instructions and maintain attention and concentration before needing redirection or requiring a break; is not able to maintain regular attendance and be punctual within customary tolerances; does not require an enhanced supervisor; is able to work with the general public, coworkers, and supervisors; and can respond appropriately to changes in the work setting sometimes, but not consistently. Further it was opined [Plaintiff] would be off task 15 percent of the workday. [Plaintiff] would be absent from work four or more days per month (Exhibit C13F). The [ALJ] does not find this opinion persuasive because it is not supported by his own objective findings, which show many normal mental examinations (Exhibits C1F, C11F and C12F). The opinion is also inconsistent with mental health treatment history that has not involved psychiatric hospitalization and objective findings elsewhere in the record. For example, findings from [Plaintiff]'s treating physicians, showed normal mental status findings, and, in fact, [Plaintiff] often denied anxiety and depression. Other records show [Plaintiff] has had only occasional pressured speech and distractibility (Exhibits C3F, C7F, C14F). This objective medical evidence is not consistent with the above opinion. Based on the above information the [ALJ] finds this opinion is not persuasive.
>
> The [ALJ] finds the opinion of Elizabeth Wilds, LSW and Chris Stephens, PMHNP-BC given in August of 2022 is not persuasive because it is not supported by their own objective findings of [Plaintiff] and not consistent with treatment and objective findings elsewhere in the record. They opined that due to [Plaintiff]'s mental impairment of bipolar disorder she would be off task 25 percent of the workday due to deficits in attention and concentration. She could maintain attention and concentration for less than 30 minutes. She would miss four or more days of work a month due to the symptoms of her bipolar disorder (Exhibit 42F). This opinion is not supported by his own objective findings, which show many normal mental examinations (Exhibits C1F, C11F and C12F). The opinion is also inconsistent with treatment (conservative in the form of medication and therapy) and objective findings elsewhere in the record. For example, findings from [Plaintiff]'s treating physicians showed normal mental status findings, and, in fact,

10

[Plaintiff] often denied anxiety and depression (Exhibits C3F, C7F, C14F). This objective medical evidence is not consistent with the above opinion. Based on the above information the [ALJ] finds this opinion is not persuasive.

The [ALJ] finds the opinion of Chris Stephens, PMHNP-BC given in September of 2022 was not persuasive because it is not supported by his own objective findings of [Plaintiff] and not consistent with treatment and objective findings elsewhere in the record. He opined [Plaintiff] is markedly limited in the ability to understand, remember, or apply information, the ability to concentrate, persist or maintain pace. She is moderately limited in the ability to interact with others, the ability to adapt or manage oneself, her short-term memory and remembering locations and work like procedures and understanding and carrying out detailed uninvolved written or oral instructions. [Plaintiff] is mildly limited in her long-term memory and understanding and carrying out very short and simple instructions. [Plaintiff] can maintain attention and concentration for less than 30 minutes before needing redirection or requiring a break. She cannot maintain regular attendance and be punctual within customary tolerances. She does not require enhanced supervision. She can work appropriately with the general public, coworkers, and supervisors sometimes but not consistently. She requires praise and positive reinforcement from supervisors to handle stress and emotions. She has the ability to maintain socially appropriate behavior sometimes, but not consistently. She has the ability to respond appropriately to changes in a work setting sometimes, but not consistently. [Plaintiff] would be off task 15 percent of the workday and would miss work four days a month due to her mental impairments. For purposes of this opinion, mild was defined as [Plaintiff]'s ability to function independently, appropriately, effectively and on a sustained basis is slightly limited. Moderately limited is defined as [Plaintiff]'s ability to function independently, appropriately, effectively and on a sustained basis is fair. Markedly limited is defined as the ability to function independently, appropriately, effectively and on a sustained basis is seriously limited (Exhibit C45F). This opinion is not supported by his own objective findings, which show many normal mental examinations (Exhibits C1F, C11F and C12F). The opinion is also inconsistent with treatment (conservative in the form of medication and therapy) and objective findings elsewhere in the record. For example, findings from [Plaintiff]'s treating physicians showed normal mental status findings, and, in fact, [Plaintiff] often denied anxiety and depression (Exhibits C3F, C7F, C14F). This objective medical evidence is not consistent with the above opinion. Based on the above information the [ALJ] finds this opinion is not persuasive.

The [ALJ] finds the opinion of Chris Stephens, PMHNP-BC/Mahajan Therapeutics given in September of 2022 is not persuasive. He opined [Plaintiff] is markedly limited in the ability to understand, remember, or apply information. She is

11

> moderately limited in the ability to interact with others. She is markedly limited in the ability to concentrate, persist, or maintain pace and moderately limited in the ability to adapt or manage oneself. She is moderately limited in remembering locations and work like procedures and in understanding and carrying out detailed but uninvolved written or oral instruction. She can only pay attention for 30 minutes and she is not able to maintain regular attendance and be punctual within tolerances. [Plaintiff] is able to work appropriately with the general public, coworkers, and supervisors sometimes but not consistently. She can maintain socially appropriate behavior and has the ability to respond appropriately to changes in the work setting sometimes but not consistently. [Plaintiff] would be off task 15 percent of the day and would be absent from work four days a month (Exhibit 46F). This opinion is not supported by his own objective findings, which show many normal mental examinations (Exhibits C1F, C11F and C12F). The opinion is also inconsistent with treatment (conservative in the form of medication and therapy) and objective findings elsewhere in the record. For example, findings from [Plaintiff]'s treating physicians showed normal mental status findings, and, in fact, [Plaintiff] often denied anxiety and depression (Exhibits C3F, C7F, C14F). This objective medical evidence is not consistent with the above opinion. Based on the above information the [ALJ] finds this opinion is not persuasive.

(R. at 29-30.)

Plaintiff cites specifically the findings from state agency medical consultants, Drs. Dietz and Johnston as consistent with the opinions of Mr. Stephens and Ms. Wilds. (ECF No. 11 at 19.) But, the ALJ found these psychological assessments "unpersuasive" as well, and explained her basis for doing so, reasoning as follows:

> The consultants opined [Plaintiff] does have a limited mental residual functional capacity; however, they did not consider the findings from the prior decision. The prior decision findings are consistent with the current record, which shows no significant improvement or worsening since the prior decision was issued. Also, the consultants' opinions are not supported by their review of the record, which they relied only upon the consultative examination findings. They are not consistent with the treatment history that shows intermittent abnormality due to continued use of substances. Mental status on many occasions was normal and has remained stable since [Plaintiff] stopped using substances (Exhibits C1F, C3F, C6F, C10F, C11F, C12F, C28F). Such evidence is not consistent with finding [Plaintiff] would be limited to one to two step tasks or superficial and brief interaction with others.

(R. at 28.)

Plaintiff also contends that the opinion of Dr. Ward, the consultative examiner, supports the opinions of Mr. Stephens and, presumably, Ms. Wilds. (ECF No. 11 at 20). The ALJ evaluated Dr. Ward's assessment as follows:

> The [ALJ] finds the opinion of Dr. Christopher Ward given in July of 2020 is persuasive because it is supported by his own objective findings of [Plaintiff] and consistent with treatment and objective findings elsewhere in the record. He opined [Plaintiff] would have difficulty understanding and remembering instructions. She would have difficulty learning new information and following instructions. She would have difficulty completing tasks assessing attention, concentration, and focus. She would have problems with concentration in work settings. She would not have limitations in maintaining effective social interactions on a consistent and independent basis with supervisors, coworkers, and the public. She has cognitive limitations which may negatively impact her ability to manage normal work pressures. Such an opinion is supported by Dr. Ward's own objective findings of [Plaintiff], including findings of some difficulties with memory, concentration, and pace (Exhibit C6F). It is also consistent with [Plaintiff]'s mental health treatment history and objective findings wherein [Plaintiff] was cooperative, has pressured speech at times, and is at time distractible (Exhibits C1F, C3F, C6F, C14F).

(R. at 29.)

Plaintiff does not explain or provide any authority for her claim that Dr. Ward's description of Plaintiff's difficulties equates to Mr. Stephens' findings, including his findings of marked limitations. Even accepting Plaintiff's argument, however, the ALJ reasonably relied on other record evidence to conclude that Mr. Stephens' opinions were inconsistent.

To this point, the ALJ repeatedly cited Plaintiff's conservative treatment history, including treatment with medication but no psychiatric hospitalizations. (*See, e.g.,* R. at 27, 28, 29, 31.) The ALJ also specifically noted Plaintiff's intermittent abnormalities

13

during times of substance use but also considered records indicating normal mental status findings across years of Plaintiff's treatment history. (*See, e.g.*, R. at 27.) The ALJ's view of Plaintiff's treatment record is supported by substantial evidence. For example, treatment notes reflect that Plaintiff was "Negative for depression, substance abuse and suicidal ideas" and was "not nervous/anxious and [did] not have insomnia." (*See, e.g.*, R. at 691, 696, 702, 705, 717, 722.) Additional treatment notes indicate that Plaintiff "had a normal mood and affect, [h]er speech [was] normal, and [her] behavior [was] normal." (*See, e.g.,* R. at 706, 718, 723.) Further notes from October 2020 confirm that Plaintiff displayed normal thought process, normal thought content, good judgment and good insight. (*See, e.g.,* R. at 1190.) More recent notes from 2021 describe Plaintiff's mood, behavior, and thought content as normal or indicate that Plaintiff was "Negative" for psychiatric or behavioral issues. (*See, e.g.,* R. at 1414, 1496.)

In short, Plaintiff's argument that the opinions of Ms. Wild and Mr. Stephens are consistent with certain opinions does not mean that the ALJ erred in and identifying and relying on the inconsistencies in the record. Indeed, Plaintiff's argument is, at its base, a classic example of an invitation to reweigh the evidence. *Nasser v. Comm'r of Soc. Sec.,* No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. Dec. 1, 2022). However, it is not this Court's role to reweigh the evidence presented to the ALJ or second guess her decision. *See, e.g., Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (noting that the court "reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ"). The

14

same can be said to the extent that Plaintiff claims that the ALJ was selective in her consideration of the opinions' consistency. Plaintiff's argument, essentially a complaint of cherry-picking, is also nothing more than an improper invitation to re-weigh record evidence. *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014). Accordingly, Plaintiff's arguments lack merit and substantial evidence supports the ALJ's conclusions.

## VI.  CONCLUSION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, Plaintiff's Statement of Errors (ECF No. 11) is **OVERRULED** and the Commissioner's decision is **AFFIRMED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

Date:  **July 23, 2024**                    /s/ *Elizabeth A. Preston Deavers*
                                            **ELIZABETH A. PRESTON DEAVERS**
                                            **UNITED STATES MAGISTRATE JUDGE**